UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JUAN MANUEL FERNANDEZ (A# 019-528-235),

Petitioner,

v.

WARDEN, CALIFORNIA CITY,

Respondent.

No. 1:26-cv-07309 DAD SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

**I. Factual and Procedural History**

Petitioner is a citizen and national of Cuba who entered the United States on August 14, 1976, as a legal permanent resident. ECF No. 1 at 6. On or around May 27, 2020, Petitioner was arrested and charged with aggravated battery on a law enforcement officer under Florida Statutes §§ 784.045(1)(a)(1)/784.07(2)(d) and resisting an officer with violence under Forida Statutes § 843.01.[1] ECF No. 7-1 at 2-6. According to the criminal report affidavit,

[1] Florida Statutes § 784.07(2)(d) states that when an individual is charged with aggravated battery on a police officer under § 784.045, "the charge shall be reclassified . . . from a felony of the second degree to a felony of the first degree."

> Officer C. Duarte was transporting the defendant to Orient Road jail. Upon arrival, Officer C. Duarte got the defendant out of the car and was waiting at the door for HCSO detention deputies to open when the defendant started to actively resist. Officer C. Duarte and the defendant entered into a physical altercation which resulted in the defendant breaking Officer C. Duarte's ankle.

Id. at 16. On August 18, 2022, Petitioner entered a plea of guilty on both charges and was sentenced to six years in prison with credit for 822 days served. Id. at 7-9.

Immigration and Customs Enforcement ("ICE") encountered Petitioner in state prison on or around December 10, 2025. ECF No. 7-2 at 2 (Form I-213). On January 26, 2026, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA") administratively charging him deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) (convicted of an aggravated felony). ECF No. 7-3. On the same date, DHS served Petitioner with a Form I-200 warrant for arrest pursuant 8 U.S.C. § 1226 that points to the NTA as the basis for Petitioner's removability and a January 26, 2026, date of service. ECF No. 7-4.

Petitioner filed his petition on September 10, 2026, alleging that his detention without pre-deprivation hearing (Count Two) or a judicial or administrative warrant (Count Four) violates the Due Process Clause of the Fifth Amendment. Id. at 6-7. Petitioner further alleges that his prolonged detention without a bond hearing before a neutral decisionmaker violates due process (Count Three). Petitioner seeks immediate release. Id. at 7. Respondent opposes the petition on grounds that Petitioner is lawfully subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(B). ECF No. 7. They further argue that Petitioner should be required to exhaust administrative remedies by pursing a hearing in the immigration court pursuant to Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999). Id.

## II. Applicable Detention Statute

According to Respondent, Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(B). That provision states that DHS "shall take into custody any [noncitizen] who is deportable by reason of having committed any offense covered in [§] 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1226(c)(1)(B). Petitioner's NTA reflects an administrative charge under § 1227(a)(2)(A)(iii), which states that "[a]ny [noncitizen] who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. §

1227(a)(2)(A)(iii). Therefore, the Court's statutory detention authority analysis turns on whether Petitioner's convictions constitute aggravated felonies under § 1227(a)(2)(A)(iii).

Respondent argues that Petitioner's aggravated battery conviction under Florida Statutes § 784.045(1)(a)(1), for which he was sentenced to six years in prison, is categorically an aggravated felony under 8 U.S.C. 1227(a)(2)(A)(iii). The INA includes an exhaustive list of "aggravated felonies" at 8 U.S.C. § 1101(a)(43). Respondent specifically maintains that this conviction falls under the category of a "crime of violence . . . for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(F). The term "crime of violence" in that provision means:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. However, paragraph (b) of this definition has been held unconstitutional, so Petitioner's conviction may only be a crime of violence if it satisfies paragraph (a). See Sessions v. Dimaya, 584 U.S. 148 (2018).

Ample authority supports finding that Petitioner's aggravated battery conviction categorically involves "an offense that has as an element the use . . . of physical force against the person or property of another." 18 U.S.C. § 16(a). Florida Statutes set out three escalating categories of criminal battery: (1) Simple Battery, Florida Statutes § 784.03; (2) Felony Battery, Florida Statutes § 784.041; and (3) Aggravated Battery, Florida Statutes § 784.045. Petitioner was convicted under Florida Statutes § 784.045(1)(a)(1), which states that "[a] person commits aggravated battery who, in committing battery . . . intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement[.]" The Eleventh Circuit noted that this element reflects that the aggravated battery statute, unlike the simple battery and felony battery statutes, is a "specific intent crime," in that it "adds the requirement that the offender intended to cause the enhanced level of harm or knew that this level of harm would be caused." United States v. Vail-Bailon, 868 F.3d 1293, 1299 (11th Cir. 2017) (en banc) (citation omitted).

The intermediate-level felony battery statute, § 784.041, requires only that the individual

"[a]ctually and intentionally touches or strikes another person against the will of the other," and "[c]auses great bodily harm, permanent disability, or permanent disfigurement." Fla. Stat. § 784.041(1)(a)-(b). Still, in Vail-Bailon, the Eleventh Circuit held that it was categorically a crime of violence under the "elements clause" of United States Sentencing Commission § 2L1.2, which is identical to 18 U.S.C. § 16(a). "[F]elony battery, which includes the additional element that the touch or strike *in fact* cause significant physical injury, necessarily requires the use of force *capable* of causing pain or injury and therefore does so qualify." Vail-Bailon, 868 F.3d at 1304 (emphasis in original). Thus, Vail-Bailon provides a strong *a priori* case for finding that the aggravated battery statute, which requires a higher, specific intent to cause the same degree of physical harm, necessarily requires the "use . . . of physical force against the person[.]" 18 U.S.C. § 16(a). Moreover, the Eleventh Circuit held in an earlier case that aggravated battery under Florida Statutes § 784.045 is a "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(i), which is an "elements clause" that is also identical to 18 U.S.C. § 16(a). Turner v. Warden Coleman FCI (Medium), 709 F.3d 1328, 1341 (11th Cir. 2013), abrogated on other grounds by Johnson v. United States, 576 U.S. 591 (2015).

The undersigned finds these authorities persuasive and agrees with Respondent that Petitioner's aggravated battery conviction under Florida Statutes § 784.045(a)(1)(a) is categorically a "crime of violence" under 8 U.S.C. § 1101(a)(43)(F). Therefore, the undersigned finds that Petitioner was convicted an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii) and is lawfully subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(B).

**III. Due Process Analysis**

Having determined that Petitioner is lawfully subject to 8 U.S.C. § 1226(c)(1)(B), the undersigned turns to the petition's as-applied, procedural due process challenge to the constitutionality of Petitioner's prolonged detention. At this point, Petitioner has been detained for over eight months. During this time, he has not received a bond hearing to determine whether his detention is justified based on his dangerousness or flight risk.

The Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c) in Demore, 538 U.S. at 531. However, the Supreme Court did so with the understanding

that § 1226(c) detention is relatively "brief" and "limited," and "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal." Id. at 513, 529 n.12, 530. Justice Kennedy joined the opinion in full, but wrote a concurring opinion recognizing the viability of as-applied challenges under the majority's framework: "[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident [noncitizen] . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring). Later, in Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court recognized the right to bring such as-applied challenges: "Our decision today on the meaning of that statutory provision [8 U.S.C. § 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." Preap, 586 U.S. at 420.

The Ninth Circuit Court of Appeal has expressly declined to address "[w]hether due process requires a bond hearing" in such situations. Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022), cert. granted, judgment vacated, 144 S. Ct. 1339 (2024). However, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional." Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018). Other Circuit Courts of Appeal have concluded that Demore does not foreclose as-applied challenges to prolonged detention under § 1226(c). Recently, the Second Circuit held that "[t]he Constitution does not permit the Executive to detain a noncitizen for an unreasonably prolonged period under section 1226(c) without a bond hearing; at some point, additional procedural protections—like a bond hearing—become necessary." Black v. Decker, 103 F.4th 133, 145 (2d Cir. 2024), cert. granted sub nom. Genalo v. Black, No. 25-886, 2026 WL 1718025 (U.S. June 15, 2026), dismissal by agreement of all parties (U.S. Sept. 11, 2026). The undersigned finds this authority persuasive and agrees that Demore does not bar an as-applied challenge to prolonged detention without a hearing to determine whether such detention is justified. The next step is to determine the appropriate framework in which to analyze petitioner's procedural due process argument.

The Due Process Clause protects persons in the United States from being deprived of life,

liberty, or property without due process of law. U.S. Const. amend. V. The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

The undersigned has considered the various tests developed by district courts within the Ninth Circuit, and finds that Mathews v. Eldridge, 424 U.S. 319 (1976), provides the appropriate test for due process challenges to prolonged detention under § 1226(c). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

**A. Mathews Factors**

**1. Private Interest**

An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). Courts of Appeal have generally declined to adopt a specific threshold for when detention under § 1226(c) becomes prolonged. See German Santos v. Warden Pike Cty. Correctional Facility, 965 F.3d 203, 211 3d Cir. 2020); Black, 103 F.4th at 150; Reid v. Donelan, 17 F.4th 1, 7–9 (1st Cir. 2021). While the Ninth Circuit has not addressed this question, it has previously referred to detentions longer than six months as prolonged "in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them." Rodriguez Diaz, 53 F.4th at 1207 (citations omitted). Indeed, other courts within this Circuit have found due process violations where the length of mandatory detention without bond was similar to the

length of detention at issue here. See, e.g., Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore" and "neither release nor removal are imminent").

Moreover, courts hearing as-applied challenges to § 1226(c) detention have also considered the likely duration of future detention. See Lopez v. Garland, 631 F. Supp. 3d 870, 880-81 (E.D. Cal. 2022) (finding petitioner's administrative appeals and likely appeal to the Ninth Circuit weighed toward granting request for bond hearing). In this case, Petitioner's master calendar hearing, which is only the first step in the removal process, see 8 C.F.R. § 1240.10(a), is not scheduled until October 22, 2026.[2] Additionally, Petitioner's eventual individual hearing before an immigration judge is not the end of his removal proceedings. Either party may choose to appeal the IJ's decision to the Board of Immigration Appeals and Petitioner could ultimately seek review by the Ninth Circuit Court of Appeals. Therefore, based on its duration to date without bond and the likelihood of continued mandatory detention during all phases of removal proceedings, the undersigned finds petitioner's detention is sufficiently "prolonged" and confers a substantial private interest.

**2. Risk of Erroneous Deprivation**

The second Mathews factor is "the risk of an erroneous deprivation of [petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. This factor firmly favors Petitioner. "[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial." Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011), abrogated on other grounds by Johnson v. Arteaga-Martinez, 596 U.S. 573, 582 (2022). Indeed, "[i]n the absence of any meaningful initial procedural safeguards, it appears to us that almost any additional procedural safeguards at some point in the detention would add value." Black, 103 F.4th at 153 (emphasis in original); see also Jimenez v. Wolf, No. 19-cv-7996 NC, 2020 WL

[2] The undersigned takes judicial notice of Petitioner's EOIR Case Information Page, https://acis.eoir.justice.gov/en/caseInformation. See Fed. R. Evid. 201(b)-(c).

510347, at *3 (N.D. Cal. Jan. 30, 2020) (finding "high" risk of an erroneous deprivation where petitioner had not received any bond or custody redetermination hearing during his one-year detention under § 1226(c)). The only procedural protection in place is an opportunity to challenge his inclusion in a mandatory detention category pursuant to Matter of Joseph, which is not a "mechanism for a detainee's release, nor for individualized review of the need for detention."[3] Accordingly, the second Mathews factor also weighs toward Petitioner.

### 3. Government Interest

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. Higher courts have repeatedly recognized that, "[t]he government has an obvious interest in 'protecting the public from dangerous criminal [noncitizens].'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 515). Courts have also recognized that the detention of noncitizens during removal proceedings can serve the legitimate government purpose of preventing flight. Prieto-Romero v. Clark, 534 F.3d 1053, 1065 (9th Cir. 2008) (citing Demore, 538 U.S. at 528). Thus, in some general way, the government has an interest in the detention of non-citizens held under § 1226(c).

However, "the additional procedural safeguards we would allow here under Mathews do nothing to undercut those interests. At any ordered bond hearing, the IJ would assess on an individualized basis whether the noncitizen presents a flight risk or a danger to the community, as IJs routinely do for other noncitizen detainees." Black, 103 F.4th at 153–54; see also Jimenez, 2020 WL 510347, at *3 ("Providing a bond hearing would not undercut the government's asserted interest in effecting removal. After all, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community.") (citing In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006)). In Petitioner's case, the government's interest in further detaining

---

[3] For this reason, the undersigned rejects Respondent's argument that Petitioner was required to pursue a Joseph hearing to exhaust his administrative remedies. ECF No. 9 at 5-6. A Joseph hearing allows "[d]etainees who deny that they satisfy any § 1226(c) predicate" to challenge their mandatory detention. Preap, 586 U.S. at 418 n.8. Here, Petitioner seeks release as a remedy for his prolonged, mandatory detention. See ECF No. 1 at 6. A Joseph hearing would not provide him with this relief.

him without a hearing to determine whether such detention is justified is minimal.

Administrative burden is also a legally cognizable interest under Mathews. But Respondent's interest is further diminished by the low fiscal and administrative burdens associated with a bond hearing. See D. L.C. v. Wofford, 2026 WL 25511, at *5 (E.D. Cal. Jan. 5, 2026) ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government." (quoting Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

**IV. Remedy**

On balance, the Mathews factors show that additional procedures are necessary to safeguard Petitioner's liberty interest in freedom from prolonged detention. Accordingly, the undersigned finds a bond hearing is the appropriate relief in this case. At that bond hearing, the government should bear the burden of demonstrating by clear and convincing evidence that petitioner presents a risk of flight or danger. See Singh v. Albarran, No. 1:26-cv-0940 DC DMC (HC), 2026 WL 392169, at *5 (E.D. Cal. Feb. 12, 2026) (collecting cases); Singh v. Chestnut, No. 1:26-cv-00127 DC SCR (HC), 2026 WL 766567 (E.D. Cal. March 18, 2026) (adopting Findings and Recommendations and granting a bond hearing). This is the appropriate burden given the liberty interests at stake. See Black, 103 F.4th at 157 ("[O]nce detention under section 1226(c) has become so prolonged that due process warrants a bond hearing . . . the government must justify continued detention at such a hearing . . .by clear and convincing evidence.").

As to Petitioner's other counts, the undersigned does not find any basis for relief. Petitioner does not have liberty interest from a previous release that justifies a pre-deprivation remedy. "[W]here ICE detains an individual upon their release from a correctional facility, without any substantial intervening period of release, that individual has no opportunity 'to form the [ ] enduring attachments of normal life.'" Carballo v. Andrews, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *4 (E.D. Cal. Aug. 15, 2025 (quoting Morrissey, 408 U.S. at 482).

As to Petitioner's challenge to his warrantless arrest, a judicial warrant is not required. "[C]onsistent with the Fourth Amendment, immigration authorities may arrest individuals for civil immigration removal purposes pursuant to an administrative arrest warrant issued by an

executive official, rather than by a judge." See Gonzalez v. U.S. Immigr. & Customs Enf't, 975 F.3d 788, 825 (9th Cir. 2020). The record reflects that DHS served Petitioner with an NTA and Form I-200 administrative warrant on January 26, 2026. Accordingly, Petitioner is not entitled to relief on this claim.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be GRANTED with respect to Count Three.

2. Respondent be ordered to provide Petitioner JUAN MANUEL FERNANDEZ (A# 019-528-235), with a constitutionally adequate bond hearing before an immigration judge at which the government shall bear the burden of justifying petitioner's continued detention by clear and convincing evidence, within fourteen (14) days of any order resolving the § 2241 petition, and with at least seven (7) days of advance notice to Petitioner and Petitioner's counsel.

3. Respondent be further directed to file a notice certifying compliance with the above provision within seven (7) days from the date of the bond hearing.

4. If Petitioner is granted release on bond, Respondent shall return all of Petitioner's documents and possessions at the time of release.

5. Any order would not address the circumstances in which Respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

6. Judgement be entered in Petitioner's favor and this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets

the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 30, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE